JAMES C. GULOTTA, Judge Pro Tem.
Defendant, Bobby Dantzler, was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. A jury found the defendant guilty as charged. He was sentenced to ninety-nine years at hard labor without benefit of parole, probation or suspension of sentence. This sentence is to be served concurrently with a sentence being served by defendant for one manslaughter conviction, but consecutively with a sentence being served for a second manslaughter conviction. Defendant appeals his conviction and sentence. We affirm.
On January 6, 1989, Rose Smith was working at the Fun and Games Room on Felicity Street in New Orleans selling candy and drinks. • At approximately 4:00 p.m., a young man walked into the establishment and leaned on a video machine. Shortly thereafter, the defendant and another young man entered the establishment at which time the man leaning on the video machine ran out of the building. Defendant walked up to the counter and asked Smith for a particular brand of candy. When she replied that she did not have that brand, the defendant kicked the door which led to the area behind the counter, pulled, out a gun and told Smith, “All right, Grandma, give it to me.” Smith put all of the money that she had collected that day on the counter. Defendant demanded more money, but Smith responded that she had given him all of the money that she had. Defendant then collected the money on the counter which totalled approximately $32.00. While the defendant was robbing Smith, the other man who came in with the defendant was breaking into a video machine.
Mary Martin, a witness to the robbery and a relative of Rose Smith, testified that she was using the telephone at the Fun and Games Room on the afternoon of January 6, 1989 when the three men entered the establishment. She corroborated the testimony of Rose Smith as to the details of the robbery and positively identified the defendant at trial as the gunman. She also testified that after robbing Smith, the defendant approached her and demanded that she “give him something.” When she responded that she did not have anything, the defendant threatened her, but then abruptly left the establishment, waving his gun and telling everyone not to move.
Detective Herman Cade of the New Orleans Police Department testified he participated in a follow-up investigation of the January 6, 1989, armed robbery at the Fun and Games Room. Detective Cade stated that he interviewed the defendant while the defendant was under arrest for another crime. He advised the defendant of his rights, but the defendant told him that he wanted to waive his rights and give a statement. At that time, the defendant gave a statement in which he admitted that he participated in the robbery, but claimed that one of his accomplices was the only one with a gun.
In his only assignment of error, defendant argues that the trial court erred in denying his motion for mistrial. During trial, defense counsel reserved his right to make a motion for mistrial. After the jury retired, defense counsel made this motion which was based on the State’s failure to disclose to the defense, prior to trial, the fact that Rose Smith had been shown a pretrial photographic lineup and had been unable to identify a suspect from this lineup. According to defense counsel, Smith’s inability to make an identification when shown a photographic lineup was exculpatory material which should have been disclosed to the defense prior to trial in accordance with Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In the Brady case, the United States Supreme Court held that the due *1387 process clause of the Fourteenth Amendment to the United States Constitution requires the disclosure, upon request, of evidence which is favorable to the accused when the evidence is material to guilt or innocence. The test for determining materiality was established in U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), as follows: “The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. ‘A reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” U.S. v. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. In this case, the defense made no pretrial request for exculpatory evidence. However, the test for determining materiality is the same whether or not such a request is made. U.S. v. Bagley, supra.
In State v. Dozier and Muse, 553 So.2d 931 (La.App. 4th Cir.1989), writ denied, 558 So.2d 567 (La.1990), the State disclosed just prior to trial that the victim had viewed a photographic lineup but had failed to identify anyone. The trial court denied the motion for mistrial as well as a subsequent motion for new trial. At the hearing on the motion for new trial, neither the State nor the defense was able to determine the circumstances surrounding the lineup. This Court found that the trial court did not err in denying the motion for mistrial because the late disclosure of the exculpatory evidence did not prejudice the defendants in light of the fact that the inability of the witness to make an identification at the photographic lineup was brought to the jury’s attention. Furthermore, this Court found that any error was harmless due to the overwhelming evidence of defendants’ guilt.
Defendant cites the case of State v. Curtis, 384 So.2d 396 (La.1980), in which the State failed to disclose that the only witness that identified the defendant as the gunman at trial had been unable to identify the defendant in a pretrial photographic lineup which included the defendant’s photograph. Because the defense did not learn of the witness’ inability to make an identification until after trial and conviction, a motion for new trial was filed but was denied. The Louisiana Supreme Court reversed the defendant’s conviction finding that the “entire basis of the State’s case” was eyewitness identification of the defendant. State v. Curtis, supra at 398. Although there were other witnesses who identified the defendant as one of the two men who approached the victim, the only witness who actually saw the shooting and who identified the defendant as the gunman at trial was the one who failed to identify the defendant in a photographic lineup. Therefore, the Court held that this witness’ testimony was the “most important and key evidence against the defendant, and his reliability would have been a crucial factor in the jury’s determination of defendant’s guilt.” Id.
The Curtis case is distinguishable from the instant case in many respects. In Curtis, the jury was not made aware of the witness’ failure to identify the defendant in an earlier photographic lineup. In the instant case, as in State v. Dozier and Muse, supra, the jury was apprised of the photographic lineup. Furthermore, in the Curtis case, it was clearly established that the defendant’s picture was included in the lineup. In this case, it is not known whether or not the defendant’s picture was included. The victim testified that she did not know whether or not the defendant’s picture was included in the lineup that she viewed and no motion for new trial was filed to determine the circumstances of the lineup.
In defendant’s brief, he argues that his picture must have been included because the other man who allegedly participated in the robbery with the defendant, Troy Anderson, was killed on the same day as the robbery. However, this reasoning does not take into account the possibility that the photographic lineup was conducted using the picture of the man who entered the Fun and Games Room before the defendant *1388 and Anderson and who was referred to as “June” in the defendant’s inculpatory statement to police. Therefore, the possibility exists that the photographic lineup shown to the victim was conducted in an attempt to determine if the third man was the perpetrator of the robbery.
Defendant further claims that an in-court identification by Martin of the defendant at trial five months after the commission of the alleged offense, absent any other earlier identification, is suspect. Because of the totality of the evidence in the instant case, we find no merit to this contention.
In addition to Martin’s in-court identification, Smith identified the defendant as the man who robbed her and the defendant gave an inculpatory statement to the police in which he stated that he was the person who took the money from the counter. Mary Martin stated that the man who stole the change on the counter did so while pointing a gun at Smith’s head. Martin also identified the defendant at trial as the robber, although we note that Martin did not view any pretrial lineups and did not see the defendant between the robbery and the date of his trial. In any event, it is clear that the in-court identification by Martin was not the only evidence that the defendant committed this armed robbery.
In light of these factors, we find that the trial court did not err in denying defendant’s motion for mistrial. Defendant was not prejudiced by the State’s failure to disclose that the victim, Rose Smith, had been unable to make an identification at a photographic lineup because that fact was brought to the attention of the jury and because it was not established that the defendant’s photograph was included in that lineup. Considering the other evidence against the defendant, especially his own inculpatory statement to police, there, was not a reasonable probability that the outcome of the proceedings would have been different even if the allegedly exculpatory evidence had been disclosed to the defense prior to trial. This assignment of error is without merit.
Accordingly, for the reasons stated above, we affirm the defendant’s conviction and sentence.
AFFIRMED