LOMBARD, J.,
dissents in part.
|,The majority concludes sua sponte that defendant Galle did not meet his burden in proving the unavailability of Mr. Williams as a witness and, as such, dismisses his argument that the trial court erred in denying his motion in limine to present Mr. Williams’ exculpatory grand jury testimony to the jury. Implicitly, the absence of any dispute as Mr. Williams’ availability (and, indeed, the State’s admission that Mr. Williams was unlikely to be available as a witness at trial) or defense counsel’s due diligence in attempting to locate him at the motion hearing was a de facto finding that the defendant did meet that burden. Moreover, the trial court explicitly denied the motion (at the urging of the State) based on a misapprehension of the law as to the admissibility of grand jury testimony.
Mr. Williams told the grand jury that Ms. Jackson was arguing with someone on the phone when he arrived at her house and, although Galle (who arrived shortly thereafter) grabbed and choked her, he stopped when Mr. Williams told him to leave Ms. Jackson alone and was out on the porch when someone else ran up the steps into the residence, past Mr. Williams and Galle, and shot Ms. Jackson. After hearing the shots, Mr. Williams turned around to see the individual with the gun charging out the door and attempted to grab him, resulting in the individual shooting him in the neck. Under questioning, Mr. Williams confirmed |2that Galle did not make any sort of signal or say anything to the individual who shot him and Ms. Jackson. Likewise, when asked whether he saw Galle give the individual anything “before he came in,” Mr. Williams responded in the negative. Mr. Williams related further that, from what he overheard, Ms. Jackson owed Galle money. As the majority concedes, this testimony differs substantially from Ms. Jackson’s narrative of events presented to the jury. Because Mr. Williams’s grand jury testimony was clearly exculpatory, the State turned it over to Galle’s defense counsel.
Conceding that Mr. Williams’s testimony was exculpatory, the State insisted at the motion hearing that “the Grand Jury testimony is not permitted to be read aloud at trial” except for impeachment purposes. Although this clearly presented a Catch-22 situation with Brady implications, ie., it was within the State’s power to withhold exculpatory testimony from the jury by not presenting a victim as a witness at trial, the trial judge agreed with the State’s interpretation of the law. This was clear error.
There is no blanket rule against revealing grand jury testimony to the jury; as conceded by the State, grand jury testimony is discoverable if it is favorable to the accused and is material to guilt or punishment under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and may be revealed to the jury for impeachment purposes. State v. Peters, 406 So.2d 189, 191 (La.1981); La.Code Crim. Proc. art. 434. In turn, La.Code Evid. art. 804 provides in pertinent part:
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable[1] as a witness:
*939 (1) Former testimony. Testimony given as a witness at another hearing of the same or a different \ ¿proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception, (emphasis added).
On appeal, the State does not contest the fact that Mr. Williams’ grand jury testimony qualifies as former testimony given by him as a witness in another hearing of the same proceeding pursuant to La. Rev. Evid. art. 804(B)(1), but argues that (1) the grand jury testimony in this case “is not truly exculpatory and is cumulative;” (2) the “similar motive” requirement of La.Code Evid. art. 804(B)(1), (5) is not satisfied because the State’s motive to “develop” Mr. Williams’ testimony on direct examination before the grand jury was not the same as it would have been in cross-examination of Mr. Williams at trial to discredit his exculpatory testimony; and (3) Galle made no actual showing of Mr. Williams’ unavailability as a witness.
These arguments are without merit. First, the State’s case at trial was based almost entirely upon the testimony of Ms. Jackson that Galle gave a handgun to Scott and told him to shoot her and then, while she was lying on the floor wounded, Galle told Scott that she was not dead and to shoot her again, resulting in Scott shoot her three more times. No testimony or evidence was introduced at trial to contradict Ms. Jackson’s testimony or undermine "her credibility as a witness.[2] Mr. Williams’ grand jury testimony was cumulative only to the extent that it placed Galle at the scene and indicated he was physically aggressive towards Ms. Jackson. Mr. Williams’ testimony differed substantially, however, as to Galle’s involvement with the shooter and the firearm involved in the attempted murders of Ms. Jackson and Mr. Williams. As such, his testimony was clearly relevant, ^material, and exculpatory insofar as to the charges attempted second degree murder which require proof beyond a reasonable doubt of specific intent to kill and the charge of being a felon in possession of a firearm which requires some connection with the firearm used in the shooting.
Next, the State clearly had the same interest in seeking to indict and then convict Galle on two counts of attempted murders and being a felon in possession of a firearm and, thus, to invalidate the exculpatory portion of Mr. Williams’ testimony in both proceedings. Notably, the State was successful in obtaining an indictment against Galle, despite Mr. Williams’ testimony before the grand jury and, although given the higher standard necessary for securing a conviction, the State may have been more aggressive in its attack on Mr. Williams’ credibility at trial, La.Code Evid. *940 art. 804(B)(1) requires only a “similar,” not identical, motive.
Finally, and most pertinently, the State did not dispute Mr. Williams’s availability as a witness or defense counsel’s due diligence in trying to locate him and it was not an issue at the hearing. Generally, a victim appears at trial as a State witness and, in this case, the State conceded that he was unlikely to appear. Moreover, the State’s argument (to this court but, notably, not to the trial court) that no Galle made no “actual showing” of Mr. Williams’ availability is spurious. The record indicates that defense counsel was diligent in trying to find Mr. Williams, although the State provided a police incident report to defense counsel with Mr. Williams’ home address, telephone number, driver’s license, social security numbers, and occupation redacted, making it difficult to locate him. On November 17, 2010, immediately after receiving Mr. Williams’s grand jury testimony from the State, defense counsel filed a motion to continue the trial date, asserting, inter alia, that he required “additional time to secure the presence of a necessary victim/witness” in the case. In the motion to quash filed on behalf of Galle on November 29, 2010, defense counsel asserted that the State failed to | ^provide him with the contact information of Mr. Williams, as it had previously been ordered to do in open court on October 26, 2010. Notably, although the minute entries of October 25, 2010, do not explicitly reflect that the State was ordered to turn over Mr. Williams contact information, the November 29, 2010 minute entry reflects that the State was given until December 13, 2010, to respond to defendant Galle’s motion to quash. The record contains neither a written response by the State to Galle’s motion to quash or any indication that the motion was ever ruled upon by the trial court. As previously noted, there was no dispute or discussion as to Mr. Williams’ availability and defense counsel’s due diligence at the motion hearing and the trial judge made no finding or ruling on the issue of whether defense counsel met his burden in establishing these factors. In his subsequent writ application to this court from the judgment denying his motion in limine, defense counsel stated that Mr. Williams was unavailable and the State did dispute that fact or assert that he had failed to make the necessary showing at the hearing. Finally, even though Mr. Williams a victim underlying one of the counts in the indictment against Galle, the State did not present him as a witness at trial.
If (as indicated by the record) the State was ordered to provide defense counsel with contact information for Mr. Williams in order to secure his presence for trial, the trial court implicitly accepted that, without that information, defense counsel could not do so. Thus, the State’s failure to comply with such order (as the record suggests) and apparent decision not to present Mr. Williams as a witness is problematic. Because Mr. Williams’ grand jury testimony is highly relevant exculpatory evidence, the erroneous exclusion of this testimony cannot be dismissed as harmless error. See State v. Higginbotham, 2011-0564, p. 3 (La.5/6/11), 60 So.3d 621, 623 (harmless error exists where the guilty verdict actually rendered was,“surely unattributable” to the error).
| [(Thus, although Ms. Jackson’s in-court testimony is clearly sufficient under Jackson v. Virginia, Galle’s convictions must be vacated. I find this a particularly difficult position to take in light of the egregious facts of this case and because it is based on a pre-trial error. However, when defense counsel appropriately sought emergency review of this error prior to trial, this court chose to deny it on the *941 basis that an adequate remedy existed on appeal and, accordingly, we must now give the issue full consideration. Because Mr. Williams’ grand jury testimony was exculpatory, the jury should have been given the opportunity to determine if it was credible and, if so, to determine whether the transcript of Mr. Williams’s grand jury testimony should be accorded more weight than Ms. Jackson’s courtroom testimony. Frankly, I think the jury is unlikely to do so but because the trial court’s error in denying Galle’s motion in limine subverted, in effect, the jury’s role in considering conflicting testimony and determining the credibility of the witnesses, Galle’s convictions and sentence should be vacated and the matter remanded for a new trial.
Therefore, I respectfully dissent from the majority’s decision to affirm Galle’s convictions and sentence but concur in the affirmation of Scott’s convictions and sentences, remanding only for imposition of the fine.

. Pursuant to La.Code Evid. art. 804(A)(5), "unavailable” is defined, in pertinent part, as *939 when the declarant:
(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means. A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying, (emphasis added).

. Galle put on no defense; counsel simply attempted to discredit the testimony of Ms. Jackson and the police investigation of the case.